2026 IL App (1st) 252530-U

No. 1-25-2530B

Third Division
May 6, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| | ) | No. 25 CR 07957 01 |
| v. | ) ) | The Honorable |
| BAPTISE WILLIAMS, | ) ) | James Murphy and Stanley Sacks, |
| Defendant-Appellant. | ) ) | Judges Presiding. |
| | ) | |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Martin and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1     *Held:*  The circuit court's pretrial detention order is affirmed, where the State established that defendant posed a real and present threat to the safety of the victim and to the community and that no pretrial conditions were available which could mitigate that threat.

¶ 2     Defendant Baptise Williams appeals from the circuit court's order detaining him before trial, pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq.* (West 2024)), as amended by Public Acts 101-652 and 102-1104 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). On appeal, defendant contends that

the State failed to establish the requirements for pretrial detention. For the reasons that follow, we affirm the circuit court's order.

¶ 3                                    BACKGROUND

¶ 4        On June 24, 2025, defendant was arrested and subsequently charged with one count of aggravated criminal sexual assault (720 ILCS 5/11-1.30(b)(i) (West 2024)) and one count of predatory criminal sexual assault of a child (*id.* § 11-1.40(a)(1)). The State filed a petition for pretrial detention, alleging that (1) the proof was evident or the presumption was great that defendant had committed a detainable offense, namely, predatory criminal sexual assault of a child, (2) defendant posed a real and present threat to the safety of any person or persons or the community, and (3) no condition or combination of conditions could mitigate those risks.

¶ 5        On June 26, 2025, the parties appeared before the circuit court for a hearing on the State's petition and the State's proffer established that, on July 17, 2024, Chicago police responded to Rush Hospital after receiving a report of sexual assault. When they arrived, the victim had already been discharged, but officers learned the details of the incident from medical staff and began an investigation. After investigating, police determined that, on July 16, 2024, the victim's 14-year-old foster sister heard the victim—a minor child of six to seven years old— swearing in a bedroom. She was surprised to hear him swearing, so went into the bedroom, where she observed defendant—who was 18 years old and also lived in the foster home— standing behind the victim. Both defendant's and the victim's pants were down, and the victim was bent over the bed. Defendant quickly jumped off of the victim and pulled up his pants. The foster sister reported the incident to her foster mother, and the victim was taken to the hospital, where he participated in a forensic interview.

¶ 6        During the forensic interview, the victim reported that, while in the bedroom, defendant pulled the victim's pants down and leaned him over the bed, with his stomach on the bed, and placed his penis into the victim's anus. The victim described the feeling in detail and further reported that there was blood. The victim also reported that similar incidents had happened in the past, some of which occurred while defendant was 17 years old. In her own forensic interview, the victim's foster sister reported the events leading to the outcry to her foster mother and the police, as described above.

¶ 7        A sexual assault kit was completed on the victim, and the state police crime lab reported that there were two contributors to samples taken from the victim's penis and urethra. The victim himself was one of the contributors. A buccal swab was also taken of defendant upon his arrest a few days before the detention hearing, which had been sent to the lab for comparison to the profile from the sexual assault kit.

¶ 8        In addition to the proffer as to the events leading to defendant's arrest, the State set forth the details of defendant's prior criminal history, reporting that defendant had no criminal background. On the day of his arrest, he was stopped by police for littering on public transit, and a name check returned the instant offense, leading to his arrest.

¶ 9        Defendant's pretrial services public safety assessment returned a score of two (of six) on the "[n]ew criminal activity" scale and a one (of six) on the "failure to appear" scale and recommended "pretrial level three."

¶ 10        In response, defense counsel noted that defendant denied all allegations against him, and that, at this point, there was no definitive answer as to who the second contributor to the victim's samples were. In addition, defense counsel contended that the State had failed to establish that defendant posed a threat or that any threat could not be mitigated by pretrial

conditions. Counsel noted that the offense occurred over a year prior to defendant's arrest, and that he had not been arrested for any other offenses in the interim, nor did he have a prior criminal history. Counsel also pointed to his low scores on the public safety assessment. Counsel further contended that the case involved an identifiable complaining witness, and defendant had not had any contact with him. Counsel explained that, while defendant had previously been in the foster system after his mother's parental rights were terminated, defendant had rekindled a relationship with her and currently lived with his birth mother, stepfather, and his stepfather's adult cousin. Counsel accordingly requested that defendant be released on GPS monitoring and home confinement.

¶ 11    After considering the parties' arguments, the circuit court entered an order granting the State's petition for pretrial detention. The circuit court found that the State had shown, by clear and convincing evidence, that the proof was evident or the presumption was great that defendant had committed a detainable offense under section 110-6.1(a) of the Code, namely, predatory criminal sexual assault of a child, and that defendant posed a real and present threat to the safety of the victim and the community which could not be mitigated by conditions short of pretrial detention.

¶ 12    In finding that defendant posed a real and present threat to the safety of any person or the community, the circuit court found that defendant had exhibited predatory behavior and sexual violence against a vulnerable person, which occurred over a period of time and went undetected for approximately a year. Defendant was also in a position of trust, being a foster brother of the victim and being older in age. As such, the circuit court found that the State had established by clear and convincing evidence that defendant posed a real and present threat not only to the victim, "but also other members of the community and especially minor individuals as well."

The circuit court also found that lesser conditions would not mitigate the risk, as GPS would not protect other minor victims. The circuit court observed that the GPS "monitors locations and not behaviors," and expressed concern that the allegations concerned violent behavior occurring over a substantial period of time, which was not the purpose of electronic monitoring. Accordingly, the circuit court ordered defendant to be detained and remanded to the custody of the Cook County sheriff pending trial.

¶ 13     On September 2, 2025, defendant filed a "Motion for Relief under the Pretrial Fairness Act," contending that pretrial detention was inappropriate. The parties came before the circuit court[1] for a hearing on defendant's motion, and the State indicated that, in addition to its proffer from the prior hearing, the victim had disclosed during his forensic interview that defendant would promise him gifts in order to bribe him to permit defendant's actions. The State further indicated that reports from the Department of Children and Family Services (DCFS) suggested that defendant had fled the foster home in which he resided with the victim, leading DCFS to file a missing person report, which the State argued demonstrated that defendant would not be able to comply with court orders if released. The State also reported that the lab had not yet completed its comparison of defendant's DNA to the sample collected from the victim, and clarified that the victim's sexual assault kit did not indicate signs of trauma such as tenderness or redness. In addition, defense counsel indicated that, should defendant be released on electronic monitoring or other conditions, he would be living with a friend and another adult, all of whom were 19 to 20 years old. After considering the parties' arguments, the circuit court reaffirmed its prior findings that pretrial detention was necessary. This appeal follows.

---

[1] We note that the judge hearing the motion was not the same judge who entered the initial pretrial detention order.

¶ 14                                                    ANALYSIS

¶ 15            On appeal, defendant contends that the State failed to establish several of the requirements

for pretrial detention. The Act provides that "[a]ll defendants shall be presumed eligible for

pretrial release." 725 ILCS 5/110-6.1(e) (West 2024). A defendant, however, may be denied

pretrial release if the State establishes that (1) the proof is evident or the presumption is great

that the defendant has committed a qualifying detainable offense, (2) the defendant poses a

real and present threat to the safety of any person or persons or of the community, and (3) no

condition or combination of conditions can mitigate the threat to the safety of any person or

persons or of the community. *Id.* Our supreme court has instructed that where the parties

proceed solely by proffer, as in this case, "the reviewing court is not bound by the circuit

court's factual findings and may therefore conduct its own independent *de novo* review" of the

evidence. *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 16            Defendant in the instant case primarily challenges the circuit court's findings as to

defendant's dangerousness and the availability of pretrial conditions. While defendant claimed

in his motion for relief that the State had failed to establish that he committed the offense,

defense counsel did not present any argument on this element during the hearing before the

circuit court, nor does defendant do so on appeal. As the circuit court's findings on this element

are amply supported by the record, we have no need to further discuss whether the State

satisfied its burden on the matter.

¶ 17            In determining whether a defendant poses a real and present threat to the safety of any

person or persons or the community, a circuit court may consider a number of factors,

including, *inter alia*, the nature and circumstances of the offense, specifically including

whether the offense is a sex offense; the history and characteristics of the defendant, including

his prior criminal history, age, and physical condition; and the identity, age, and physical condition of any victim. 725 ILCS 5/110-6.1(g) (West 2024).

¶ 18　　　Defendant contends that the State failed to establish that he posed a real and present threat, either to the victim or to the community, where, "[o]utside of the allegations, the Court did not explain how [defendant] is a real and present threat to the minor, other minors, or to the community." Defendant's argument is primarily based on *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18, where we held that, "logically, the bare allegations that defendant has committed a violent offense are not sufficient to establish" that there are no conditions which could mitigate any threat posed by the defendant. Defendant's reliance on *Stock*, however, is not appropriate here, as our discussion in that case concerned the third element—the availability of conditions—and not the second element—dangerousness. As noted, the legislature specifically contemplated a consideration of "[t]he nature and circumstances of any offense charged, including whether the offense is *** a sex offense" in the dangerousness calculation. 725 ILCS 5/110-6.1(g)(1) (West 2024). To the extent that *People v. McGee*, 2024 IL App (2d) 240057-U—the other case relied on by defendant—suggests that we may not look to the allegations of the offense at all in analyzing a defendant's dangerousness, we disagree with that interpretation of the Act's requirements.

¶ 19　　　Here, the nature and circumstances of the offense charged squarely support the circuit court's dangerousness finding, especially in combination with the other factors identified in the Act. As established by the State's proffer, defendant was in a position of trust and authority over his six-year-old foster brother, with whom he lived in the same home. Defendant repeatedly violated that trust by engaging in sexual contact with the child, bribing him with gifts to allow the abuse to continue. Consequently, defendant's conduct went undetected for a

substantial length of time, until their foster sister discovered it. Moreover, defendant did not cease his conduct by his own volition—he was caught by his foster sister, after which he fled the foster home.

¶ 20     Defendant makes much of the fact that he lacks a criminal history and that there were no allegations of criminal conduct in the year between his alleged conduct and his arrest. Defendant, however, was only 18 years old at the time of the alleged abuse, meaning that his lack of criminal record is unsurprising. In addition, the crime as alleged was one which involved an existing relationship and trust between defendant and the victim—defendant is not accused of indiscriminate attacks against strangers. As such, the fact that defendant has not been accused of similar conduct in the interim does not lessen the threat he poses. Here, the evidence established that defendant poses a real and present threat to the victim and to the community and, accordingly, the circuit court properly found that the State had presented sufficient evidence as to that element.

¶ 21     We similarly find that the circuit court properly determined that no pretrial conditions exist which could mitigate the threat posed by defendant. As observed by the State, defendant's conduct occurred inside the home, a location where he would likely be confined if he was released on pretrial conditions. In addition, as the circuit court noted, a condition such as electronic monitoring would not protect against the form of abuse allegedly committed by defendant—*i.e.*, one which occurs in the course of a relationship formed over time with the victim. We also observe that defendant does not appear to have a stable home environment, moving from a foster home to the home of his biological mother to living with a friend during the course of the instant litigation, and share the circuit court's concern over permitting home confinement to a home which defendant shares with two other 19- to 20-year-olds.

¶ 22    We disagree with defendant's contentions that the circuit court's findings concerning the propriety of electronic monitoring were based merely on "generalized reasons" and that there was no evidence as to his ability to comply with pretrial conditions. As discussed above, the circuit court's findings were based on whether electronic monitoring was appropriate for this particular defendant, expressly considering the nature of the allegations against him. In addition, the judge considering defendant's motion for relief also specifically found that defendant's flight from his foster home supported the finding that pretrial conditions such as electronic monitoring were not appropriate for this defendant. As such, the circuit court properly found that the State had established that pretrial detention was necessary.

¶ 23                              CONCLUSION

¶ 24    For the reasons set forth above, we affirm the circuit court's order granting the State's petition for pretrial detention, as the circuit court properly found that defendant posed a real and present threat to the victim and to the community and that no pretrial conditions were available which could mitigate that threat.

¶ 25    Affirmed.